**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

**No. 18-4180**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

ROMIQUE R. RADCLIFFE, a/k/a Romique Rohan Radcliffe,

        Defendant – Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, Senior District Judge. (3:17-cr-00139-HEH-1)

---

Submitted: August 14, 2018              Decided: December 21, 2018

---

Before DUNCAN and WYNN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

Geremy C. Kamens, Federal Public Defender, Caroline S. Platt, Appellate Attorney, Alexandria, Virginia, Mary E. Maguire, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Stephen E. Anthony, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Romique Radcliffe seeks to suppress evidence that he was a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court denied Radcliffe's motion. On appeal, Radcliffe contends that the *Terry* stop and frisk that led to the discovery of his firearm was an unlawful search and seizure. For the reasons that follow, we affirm the district court's denial of Radcliffe's motion to suppress.

I.

While conducting an unrelated investigation in a high-crime area of Richmond, Virginia during the afternoon of August 30, 2017, Detective Elmer Fernandez observed Radcliffe lift up his shirt and adjust an object in his waistband. Detective Fernandez radioed this information and a description of Radcliffe to colleagues in a nearby car.

After receiving this information, two other detectives, including Detective Joseph Milton, approached Radcliffe and requested identification. As Detective Milton was later to testify at the suppression hearing, Radcliffe appeared very nervous; when Radcliffe reached into his pocket to retrieve his identification, he accidentally spilled several other items to the ground and was "visibly shaken." J.A. 55. Radcliffe handed his identification to Milton. At some point early on in the encounter, Detective Milton detected a strong, localized odor of marijuana.

Detective Milton told Radcliffe that a surveillance team had observed him put something into his waistband. Apparently in response, Radcliffe voluntarily raised his

2

shirt. Detective Milton commented about the marijuana smell, and in response Radcliffe admitted that he had been smoking marijuana and had some on his person. When Radcliffe reached for the marijuana in his pocket, Detective Milton stopped him and conducted a search. Meanwhile, another officer held onto his identification. The search yielded a small amount of marijuana and a firearm.

## II.

On October 17, 2017, Radcliffe was indicted by a grand jury in the Eastern District of Virginia for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Radcliffe then moved to suppress the firearm. Following a suppression hearing, the district court denied the motion on two independent bases: first, the police had a reasonable articulable suspicion to conduct a *Terry* stop of Radcliffe; and second, after smelling marijuana on Radcliffe's person, Detective Milton had probable cause to arrest Radcliffe for possession of marijuana and search him incident to that arrest. This appeal followed.

## III.

We affirm the district court's denial of the motion to suppress on the second independent basis it announced: that the search of Radcliffe's person during which the gun was seized was a valid search incident to a probable cause arrest.

Although Radcliffe's brief is not entirely clear, he does not appear to directly challenge this rationale for denying his suppression motion. Rather, he argues that at the

3

moment he was seized the officers did not have a reasonable articulable suspicion that he was engaged in criminal activity, and they had not yet detected the smell of marijuana, which provided the basis for the probable cause search. According to Radcliffe, he was seized at the moment the officers approached him and "demanded" and retained his identification--the smell of marijuana and the gun are therefore fruit of the poisonous tree and cannot justify the search.

We disagree. We conclude that the district court did not err in holding that the moment of Radcliffe's seizure did not occur until after the officers smelled marijuana on his person and that, considering the marijuana odor, the officers had probable cause to arrest Radcliffe and to subsequently search him incident to the lawful arrest. Because we affirm the district court's denial of the suppression motion on the grounds that Detective Milton conducted a search incident to a lawful arrest, we need not address Radcliffe's other argument that the officers lacked a reasonable articulable suspicion.

We first address whether the search was justified as a search incident to a probable cause arrest, and then turn to Radcliffe's argument about the timing of his seizure.

A.

In considering a denial of a motion to suppress, "we review the district court's legal conclusions de novo and its factual findings for clear error." *United States v. Slocumb*, 804 F.3d 677, 681 (4th Cir. 2015). We construe the evidence in the light most favorable to the party that prevailed below, here the government. *Id.*

4

Our inquiry begins with the Fourth Amendment, which provides for "[t]he right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A search or seizure that is conducted without first obtaining a warrant is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Among the exceptions to the warrant requirement is a search incident to a lawful arrest. *Arizona v. Grant*, 556 U.S. 332, 338 (2009).

Under the Fourth Amendment, a police officer may lawfully arrest a defendant in a public place absent a warrant when the officer possesses probable cause to believe that a defendant committed an offense. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Probable cause exists where the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Whether the officer has probable cause is a fact-based inquiry that considers the totality of the circumstances. *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004). Under the search incident to arrest exception, a search may validly be incident to a probable cause arrest even if it occurs prior to the arrest. *See United States v. Han*, 74 F.3d 537, 541 (4th Cir. 1996).

Detective Milton had probable cause to arrest Radcliffe and, incident to that arrest, to search him. Possession of marijuana is a crime in Virginia, Va. Code Ann. § 18.2-250.1 (2018), and we have held that the odor of marijuana localized to a person can

5

provide probable cause to believe that the person has committed or is committing the crime of possession of marijuana, *see Humphries*, 372 F.3d at 658–59 (holding that the police had probable cause to search and seize a defendant who was by himself and smelled strongly of marijuana). Here, Detective Milton had probable cause to believe that Radcliffe was committing an offense. During their encounter, he smelled a localized odor of marijuana originating from Radcliffe, and Radcliffe told Detective Milton that he had recently smoked marijuana and had some on his person. In addition, Radcliffe was unusually nervous, which strengthens the conclusion that Detective Milton had probable cause to suspect culpability. *See, e.g.*, *United States v. Foreman*, 369 F.3d 776, 785 (4th Cir. 2004) (determining that "exceptional[]" or unusual nervousness is a basis for a reasonable suspicion of wrongdoing). Based on these facts, the officers had probable cause to arrest Radcliffe for possession of marijuana.

Because Detective Milton had probable cause to arrest Radcliffe, he could validly search Radcliffe incident to that arrest. This search was incident to the arrest for the purposes of the exception even though it preceded the formal arrest, *see Han*, 74 F.3d at 541, and accordingly the evidence procured from this search, the gun, is admissible.

### B.

Radcliffe argues that he was unlawfully seized before the officers smelled marijuana on his person, and that therefore they did not have a reasonable articulable suspicion--and by extension probable cause--to believe that he was engaged in criminal activity. Because the reasonableness of a stop "must be measured by what the officers

6

knew before they conducted their search," *Florida v. J.L.*, 529 U.S. 266, 271 (2000),

Radcliffe argues that the marijuana odor and the gun should be suppressed as fruit of the

poisonous tree. We disagree.

A seizure occurs when "a reasonable person would [not] feel free to terminate the

encounter" with the police. *United States v. Drayton*, 536 U.S. 194, 201 (2002).

Radcliffe contends that he was not free to leave, and was therefore unlawfully seized, the

moment the officers approached him with tactical vests and holstered sidearms and

"demanded" and retained his identification. *See United States v. Black*, 707 F.3d 531,

537–38 (4th Cir. 2013) (explaining that in determining whether a reasonable person

would feel free to leave, courts may consider factors such as the number of police officers

involved in the stop, whether they were wearing uniforms, and whether they were

displaying their weapons). However, a seizure does not occur merely because officers

"approach[] individuals on the street . . . and put[] questions to them if they are willing to

listen." *Drayton*, 536 U.S. at 201. Where, as here, two police officers with holstered

sidearms merely approached Radcliffe on a public street, their presence would not be so

intimidating that a reasonable person would have felt unable to leave. *See, e.g.*, *United

States v. Weaver*, 282 F.3d 302, 311–12 (4th Cir. 2002) (concluding that a pedestrian

approached by an officer in a public parking lot in broad daylight could have walked

away from the encounter even though it may have created an awkward situation).

Further, we have held that a reasonable person would feel free to leave where the police

simply ask him for his identification and do not otherwise indicate that they will restrain

him. *See Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 461–62 (4th Cir. 2013)

7

(explaining that when an officer asks a pedestrian for her identification in a non-threatening manner, such conduct generally does not transform a consensual encounter into a seizure). Here, the district court found that Detective Milton simply asked for, and did not demand, Radcliffe's identification, and there is no evidence the officers prevented Radcliffe from leaving.

Finally, Radcliffe was not prevented from leaving by virtue of an officer briefly retaining his identification while he was searched. An officer's brief retention of an individual's identification generally does not, without more, constitute a seizure. *See Weaver*, 282 F.3d at 312–13 (explaining that the defendant was free to request that the officers return his driver's license to him so that he could terminate the encounter even though the officers were in uniform and armed). Here, where the officers acted in a non-threatening manner and Radcliffe voluntarily handed over his identification, he could have, as in *Weaver*, asked for it to be returned or expressed his desire to leave, but did not. *Id.* Moreover, the officers here did not retain Radcliffe's identification for longer than necessary to determine his identity. *See Black*, 707 F.3d at 538.[1] In light of these facts, we conclude that Radcliffe's encounter was consensual because a reasonable

_____

[1] Radcliffe relies on *Black*, 707 F.3d at 538, to support his argument that the officers' retention of his identification turned the police encounter into a seizure. This reliance is misplaced. In *Black*, the court determined that the defendant was unlawfully seized, in part because the police retained Black's identification for some time while talking to several other individuals. *Id.* at 537–38. In contrast, the officers here did not retain Radcliffe's identification for long enough to turn the encounter into an unlawful seizure: at the moment the officers took Radcliffe's identification, or shortly thereafter, they smelled the marijuana odor on his person, at which point they had probable cause to arrest him.

person would have felt free to not cooperate with the officers and leave. *See id.* at 309 (finding that circumstances are consensual when a reasonable person "would feel free to go, but stays and has a dialogue with the officer").

Accordingly, we conclude that, contrary to Radcliffe's contentions, he was not seized at the moment the officers approached him and asked for his identification. Instead, his formal seizure did not occur until sometime after the officers detected a localized odor of marijuana; therefore, the marijuana odor validly provided the officers with a basis to execute a probable cause arrest. Because the officers had probable cause to arrest Radcliffe, the ensuing search was a valid search incident to arrest, and the evidence, including the gun, procured therein is admissible.

IV.

We therefore affirm the district court's denial of Radcliffe's motion to suppress.

*AFFIRMED*